**No. 26-04721**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

CERTAIN UNDERWRITERS AT LLOYD'S LONDON, et al.,

*Appellants*,

v.

Roman Catholic Archbishop of San Francisco

*Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:25-cv-08563

---

# APPELLANT LONDON MARKET INSURERS' OPENING BRIEF

---

Russell W. Roten (SBN 170571)
Jeff D. Kahane (SBN 223329)
Timothy W. Evanston (SBN 319342)
Isabelle Cho (SBN 360275)
**Skarzynski Marick & Black LLP**
333 South Grand Avenue, Suite 3550
Los Angeles, CA 90071
Telephone: (213) 721-0650
rroten@skarzysnki.com
jkahane@skarzynski.com
tevanston@skarzynski.com
icho@skarzynski.com

Catalina J. Sugayan
Michael Norton (*pro hac vice*)
Yongli Yang (*pro hac vice*)
**Clyde & Co US LLP**
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 635-7000
catalina.sugayan@clydeco.us
michael.norton@clydeco.us
yongli.yang@clydeco.us

*Counsel for Appellants Certain Underwriters at Lloyd's London, et al.*

# CORPORATE DISCLOSURE STATEMENT

Without waiving any rights, pursuant to Federal Rule of Civil Procedure 7.1 and Federal Rule of Bankruptcy Procedure 8012, Appellants Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively "LMI")[1] furnish the following:

- **Certain Underwriters at Lloyd's, London** have no parent company. No publicly held company owns 10% or more of their stock.
- **Catalina Worthing Insurance Limited (formerly known as Hartford Financial Products International Limited)** (as transferee of the whole of the insurance business of Excess Insurance Company Limited, [Hart Fire Insurance Company (London Branch)], is a private limited company incorporated in England and Wales with registered number 5965916 and having its registered office at 1 Alie Street, London E1 8DE, authorized by the Prudential Regulation Authority and regulated by the Prudential Regulation Authority and the Financial Conduct Authority (FRN 468832). Catalina Worthing Insurance Limited's parent company is Catalina Holdings (Bermuda) Ltd. Catalina Holdings (Bermuda) Ltd. is owned by funds managed by affiliates of Apollo Global Management, Inc.
- **Ocean Marine Insurance Company Limited (as Part VII transferee of The World Auxiliary Insurance Corporation Limited)** Ocean Marine Insurance Company Limited's parent company is Aviva Insurance Limited. No publicly held company owns 10% or more of its stock.
- **River Thames Insurance Company Limited** is a wholly owned subsidiary of Cavello Bay Reinsurance Limited, all of whose stock is ultimately owned by Elk Topco, LLC. No publicly held company owns 10% or more of its stock.
- **Dominion Insurance Company Ltd** is 100% owned by Premia Holdings Ltd and a subsidiary of Arch Capital

[1] London Market Insurers are Certain Underwriters at Lloyd's, London; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd.); the Ocean Marine Insurance Company Limited (as Part VII transferee of the World Auxiliary Insurance Corporation Limited); River Thames Insurance Company Limited; Dominion Insurance Company Limited; Companhia de Seguros Fidelidade-Mundial f/k/a Fidelidade Insurance Company of Lisbon; and R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.)

Group (a publicly traded company) owns more than 10% of Premia Holdings Ltd.

- **Companhia de Seguros Fidelidade-Mundial SA (f/k/a as Fidelidade Insurance Company of Lisbon)** Companhia de Seguros Fidelidade-Mundial SA has no parent company. No publicly held company owns 10% or more of its stock.

- **R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.**) R&Q Gamma Company's parent company is Randall & Quilter II Holdings Ltd. No publicly held company owns 10% or more of its stock.

The foregoing statements are made without prejudice to any and all rights and defenses that can be asserted by LMI.

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................1

JOINDER ..............................................................................................3

JURISDICTIONAL STATEMENT .........................................................3

ISSUE PRESENTED ...........................................................................5

STATEMENT OF THE CASE ...............................................................6

SUMMARY OF THE ARGUMENT .......................................................6

STANDARD OF REVIEW ....................................................................8

ARGUMENT .......................................................................................10

I. THE BANKRUPTCY COURT FAILED TO APPLY THE CORRECT LAW BY NOT DETERMINING CAUSE ON A CASE-BY-CASE BASIS ..........................................................10

A. Neither the Bankruptcy Court Nor the District Court Examined Any Fact Relevant to Any One of the Five Released Cases…...............11

B. Other Circuits Confirm That Cause Turns on the Facts of the Specific Matter, Not a Category of Matters…......................13

C. *Tucson Estates* Does Not Support a Categorical Reading of the Case-by-Case Standard…..........................................14

D. The *Sacramento* Decision Never Required a Case-by-Case Determination of Cause…........................................16

E. The *Oakland* Decision Applied the Incorrect Standard of Review and Never Required a Case-by-Case Determination of Cause….............17

CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

Cases Page(s)

*Gross v. FBL Financial Services, Inc.*,
557 U.S. 167 (2009) ....................14

*In Greene*,
583 F.3d 614 (9th Cir. 2009) ....................8

*In re A & C Props.*,
784 F.2d 1377 (9th Cir. 1986) ....................8

*In re Bonham*,
229 F.3d 750 (9th Cir. 2000) ....................5

*In re Brown*,
311 B.R. 409 (E.D. Pa. 2004) ....................13

*In re Busch,*
294 B.R. 137 (B.A.P. 10th Cir. 2003) ....................13

*In re Caldwell,*
101 B.R. 728 (Bankr.D.Utah 1989) ....................13

*In re City of San Bernardino*,
558 B.R. 321 (C.D. Cal. 2016) ....................9

*In re Conejo Enters., Inc.*,
96 F.3d 346 (9th Cir. 1996) .................... passim

*In re Curtis*,
40 B.R. 795 (Bankr. D. Utah 1984) ....................9

*In re Feingold,*
730 F.3d 1268 (11th Cir. 2013) ....................12

*In re Gindi,*
642 F.3d 865 (10th Cir. 2011) ....................................................................13

*In re JTS Corp.*,
617 F.3d 1102 (9th Cir. 2010) ....................................................................8

*In re Mac Donald,*
755 F.2d 715 (9th Cir. 1985) ......................................................................7

*In re Mazzeo*,
167 F.3d 139 (2d Cir. 1999).........................................................................12

*In re Neals,*
459 B.R. 612 (Bankr.D.S.C.2011) ................................................................13

*In re Roman Cath. Bishop of Oakland Bankr. Automatic Stay Appeal*,
680 B.R. 658 (N.D. Cal. 2026) ........................................................... passim

*In re Strand*,
375 F.3d 854 (9th Cir. 2004) ......................................................................8

*In re Tucson Estates*,
912 F.2d 1162 (1990).......................................................................... 5, 6, 14, 15

*In re Wilson*,
116 F.3d 87 (3d Cir. 1997)...........................................................................12

*Interstate Fire & Cas. Co. v. Roman Cath. Bishop of Sacramento*,
2026 WL 508073 (E.D. Cal. Feb. 24, 2026)....................................... 5, 6, 15, 16

*Matter of Baptist Medical Center of New York, Inc.,*
52 B.R. 417 (E.D.N.Y. 1985) .......................................................................13

*Ritzen Grp., Inc. v. Jackson Masonry, LLC*,
589 U.S. 35 (2020)..........................................................................................4

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
563 U.S. 401 (2011) .......................................................................................14

*United States v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) .......... 8, 17

Statutes

11 U.S.C. § 362(d) .......... 9
28 U.S.C. § 158(a)(1) .......... 4
28 U.S.C. § 158(c)(1) .......... 4
28 U.S.C. § 158(d) .......... 5

Rules

Federal Rule of Appellate Procedure 4(a)(1)(A) .......... 5

# INTRODUCTION

This is an appeal from the District Court of the Northern District of California ("District Court")'s order ("District Court Order"[2]) affirming the Bankruptcy Court for the Northern District of California ("Bankruptcy Court") in the Chapter 11 case of The Roman Catholic Archbishop of San Francisco ("Debtor"). Appellants are certain London Market Insurers ("LMI"),[3] non-settling insurers of the Debtor. The District Court Order approved a stipulation ("Stipulation") resolving a motion ("Motion") that the Debtor had filed to modify the automatic stay (together with the Bankruptcy Court's orders granting it, the "Bankruptcy Court Order").[4]

---

[2] 1-LMIER-2–14 (*Order Affirming Bankruptcy Court's Order Granting Relief from Automatic Stay*, Dist. Ct. Dkt. No. 111).

[3] "London Market Insurers", or "LMI" are Certain Underwriters at Lloyd's, London; Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Co. Ltd.); the Ocean Marine Insurance Company Limited (as Part VII transferee of the World Auxiliary Insurance Corporation Limited); River Thames Insurance Company Limited; Dominion Insurance Company Limited; Companhia de Seguros Fidelidade-Mundial f/k/a Fidelidade Insurance Company of Lisbon; and R&Q Gamma Company Limited (as Part VII transferee of Anglo French Ltd.).

[4] The "Stipulation" is the *Stipulation by and Among the Roman Catholic Archbishop of San Francisco, the Official Committee of Unsecured Creditors, and the Survivor Defendants*, Bankr., Dkt. No. 1285-1. *See* 3-LMIER-567–595.

The "Motion" is the *Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay*, Bankr., Dkt. No. 1285. *See* 3-LMIER-553–562.

The "Order" is the Bankruptcy Court's Docket Text Order (entered Sept. 2, 2025) and its *Order Granting Debtor's Motion to Approve Compromise and Stipulation*

A motion for relief from the automatic stay asks one question: does cause exist to release this action from the stay? That question must be answered for each action released, not assumed for all of them at once. The Bankruptcy Court Order released five specific lawsuits ("Released Cases") from among hundreds pending against the Debtor and its affiliates without ever asking that question of any one of them. It rested instead on a record that spoke only to the litigation as a category, not by individual case.

The District Court compounded this error rather than correcting it. It excused the absence of any case-specific finding by misreading the one Ninth Circuit decision it cited as authority, and it relied on two inapposite opinions that made the identical mistake, calling them "highly persuasive" without recognizing that neither had performed the analysis the law requires.

For these reasons, and for those set forth in greater detail herein, LMI respectfully request that this Court reverse the District Court Order, vacate the Bankruptcy Court Order, and remand with instruction to deny the Motion.

---

*Modifying the Automatic Stay*, Bankr., Dkt. No. 1346. *See* 1-LMIER-15–51 (Written Order), 1-LMIER-52 (Docket Text Order).

## JOINDER

LMI join and adopt the arguments and request for relief set forth in the *Opening Brief on Appeal of Appellant Appalachian Insurance Company* ("Appalachian Opening Brief"), as if fully set forth herein.[5]

LMI also join and adopt the arguments and request for relief set forth in the Appellants Century Indemnity Company, Pacific Indemnity Company, and Westchester Fire Insurance Company's *Brief for Appellants* ("Pacific Opening Brief"),[6] as if fully set forth herein.

## JURISDICTIONAL STATEMENT

This is an appeal from the District Court Order affirming the Bankruptcy Court Order in the Chapter 11 case of the Debtor.

On August 7, 2025, the Debtor filed the Motion in its Bankruptcy Case.[7] On August 21, 2025, LMI and other insurers opposed the Motion.[8] On September 2,

---

[5] Case No. 26-4721, Dkt. No. 15.

[6] Case No. 26-4721, Dkt. No. 18.

[7] The term "Bankruptcy Case" means the case entitled The Roman Catholic Archbishop of San Francisco, Case No. 3:23-bk-30564, pending in the Bankruptcy Court.

[8] 3-LMIER-386–544 (*Insurers' Objection to Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay*, Bankr., Dkt. No. 1302).

2025, the Bankruptcy Court issued a Docket Text Order granting the Motion.[9] On September 17, 2025, the Bankruptcy Court issued a written order[10] supplementing the Docket Text Order. The Bankruptcy Court Order is final for all purposes.[11] The District Court had jurisdiction over the appeal under 28 U.S.C. § 158(a)(1) because the Bankruptcy Court Order was a final order.

LMI timely appealed the Bankruptcy Court Order on September 16, 2025, and elected to have the appeal heard by the District Court, pursuant to 28 U.S.C. § 158(c)(1).[12] LMI filed their Opening Brief on December 2, 2025.[13] The Debtor and the Official Committee of Unsecured Creditors ("Committee") each filed their Response Briefs on January 6, 2026.[14] LMI filed their Reply Brief January 6,

---

[9] 1-LMIER-52 (Docket Text Order, entered Sept. 2, 2025).

[10] 1-LMIER-15–51 (*Order Granting Debtor's Motion to Approve Compromise and Stipulation Modifying the Automatic Stay*, Bankr., Dkt. No. 1346).

[11] *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 589 U.S. 35, 37-38 (2020) (holding that a bankruptcy court's unreserved grant or denial of relief from the automatic stay "yields a final, appealable order").

[12] 2-LMIER-117–131 (*Notice of Appeal and Statement of Election*, Bankr., Dkt. No. 1344).

[13] 11-LMIER-2233–2263 (*Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies' Opening Brief*, Dist. Ct. Dkt. No. 60).

[14] 10-LMIER-2051–2069 (*The Official Committee of Unsecured Creditors' Opening Brief*, Dist. Ct. Dkt. No. 73); 9-LMIER-1875–1921 (*Response Brief of Appellee the Roman Catholic Archbishop of San Francisco*, Dist. Ct. Dkt. No. 75).

2026.[15] On June 22, 2026, the District Court entered the District Court Order affirming the Bankruptcy Court Order.[16] On July 22, 2026, LMI timely appealed the District Court Order pursuant to Federal Rule of Appellate Procedure 4(a)(1)(A).[17] This Court has jurisdiction over the appeal under 28 U.S.C. § 158(d) because the District Court Order is a final order.[18]

**ISSUE PRESENTED**

Whether the District Court erred in affirming the Bankruptcy Court Order's improper modification of the stay as to five cases, without examining any individually, and in excusing that failure based on authority – *Tucson Estates*,[19] *Sacramento*,[20] and *Oakland*[21] – that does not support it.

The pertinent statutes and rules are included in the Addendum.

---

[15] 9-LMIER-1854–1869 (*Certain Underwriters at Lloyd's, London and Certain London Market Insurance Companies' Omnibus Reply Brief*, Dist. Ct. Dkt. No. 79).

[16] 1-LMIER-2–14.

[17] 12-LMIER-2409–2428 (*Notice of Appeal*, Dist. Ct. Dkt. No. 113).

[18] *In re Bonham*, 229 F.3d 750, 761 (9th Cir. 2000) ("[A]ppellate jurisdiction exists when the bankruptcy court order and the decision of the district court acting in its bankruptcy appellate capacity are both final orders").

[19] *In re Tucson Estates*, 912 F.2d 1162 (9th Cir. 1990).

[20] *Interstate Fire & Cas. Co. v. Roman Cath. Bishop of Sacramento*, No. 2:25-CV-02262 WBS, 2026 WL 508073 (E.D. Cal. Feb. 24, 2026).

[21] *In re Roman Cath. Bishop of Oakland Bankr. Automatic Stay Appeal*, 680 B.R. 658 (N.D. Cal. 2026).

## STATEMENT OF THE CASE

LMI join and adopt the Statement of the Case set forth in the Appalachian Opening Brief.[22]

## SUMMARY OF THE ARGUMENT

Cause to lift the automatic stay must be shown for the specific action released, not inferred from a record describing only the general case category. The Bankruptcy Court Order identified no fact about any of the five Released Cases and no reason for choosing these five over any other cases from the same pool. The District Court excused this by improperly reading *Tucson Estates*[23] to permit a categorical showing. However, *Tucson Estates* addressed only a single lawsuit, and the Ninth Circuit's decision to lift the stay rested on specific findings about that one case. If anything, *Tucson Estates* confirms that the case-by-case standard requires exactly the kind of case-specific analysis the District Court read it to excuse. Other circuits confirm that the case-by-case requirement, read according to its plain meaning, demands examination of the facts of the specific matter before the court, not a category of matters. Applying the standard to categories of cases

---

[22] *See supra* Joinder.

[23] *In re Tucson Estates*, 912 F.2d 1162 (9th Cir. 1990).

rather than individual cases never requires the movant to show why each case, rather than any other five from the same pool, satisfies cause.

The District Court found the *Sacramento*[24] and *Oakland*[25] district court decisions "highly persuasive" and relied on them in large part to affirm the Bankruptcy Court Order.[26] Neither is persuasive, because each affirmed stay relief granted without the case-by-case determination of cause that this Court requires.[27] *Sacramento* affirmed a finding of cause for releasing specific actions based on a single aggregate fact about the category of litigation as a whole, without ever asking whether cause existed for each of the four actions actually released. *Oakland* compounds the same error by applying the wrong standard of review. It credited the bankruptcy court with identifying the correct legal rule, even though that court's own reasoning never examined any of the released cases individually, and could not have, because it left the selection of those cases to the state court.

This Court should reverse the District Court, vacate the Bankruptcy Court Order, and remand with instructions to deny the Motion.

---

[24] *Bishop of Sacramento*, 2026 WL 508073 (E.D. Cal. Feb. 24, 2026).

[25] *Bishop of Oakland*, 680 B.R. 658 (N.D. Cal. 2026).

[26] 1-LMIER-7.

[27] *In re Conejo Enters., Inc.*, 96 F.3d 346, 352 (9th Cir. 1996); *In re Mac Donald,* 755 F.2d 715, 717 (9th Cir. 1985).

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's decision on appeal from a bankruptcy court, and reviews the bankruptcy court's decision independently, without deference to the district court's decision.[28] Findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*.[29]

Decisions granting relief from the automatic stay and decisions approving a compromise are each reviewed for abuse of discretion.[30] However, that review follows a two-step test. The first step asks, *de novo*, whether the bankruptcy court identified and applied the correct legal rule to the relief it requested.[31] If it did not, the bankruptcy court abused its discretion, and the inquiry ends there.[32] Only if the bankruptcy court applied the correct legal rule does the second step ask whether that application was illogical, implausible, or without support in inferences that may be drawn from the facts in the record.[33]

---

[28] *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010); *see also In Greene*, 583 F.3d 614, 618 (9th Cir. 2009); *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004).

[29] *JTS Corp.*, 617 F.3d at 1109.

[30] *Conejo*, 96 F.3d at 351(9th Cir. 1996); *In re A & C Props.*, 784 F.2d 1377, 1380-81 (9th Cir. 1986).

[31] *United States v. Hinkson*, 585 F.3d 1247, 1262-63 (9th Cir. 2009).

[32] *See id.*

[33] *See id.*

LMI's challenge is confined to the first step. The question is whether cause to grant several actions relief from the automatic stay may rest on a categorical examination of the record as to all such cases, rather than facts about each specific action granted relief. That is a question of law rather than a factual determination entitled to deference or an appropriate exercise of discretion. The Bankruptcy Court applied the categorical standard rather than the case-by-case standard this Court requires, so it did not identify and apply the correct legal rule, and the inquiry ends there. The District Court compounded that error by affirming the Bankruptcy Court Order.

## ARGUMENT

### I. THE BANKRUPTCY COURT FAILED TO APPLY THE CORRECT LAW BY NOT DETERMINING CAUSE ON A CASE-BY-CASE BASIS

11 U.S.C. § 362(d) directs the bankruptcy court to grant relief from the automatic stay "for cause." Because the Bankruptcy Code does not define "cause," the Court has directed lower courts to determine whether it exists on a case-by-case basis.[34] For such evaluation, courts in the Ninth Circuit commonly apply the *Curtis* factors.[35]

The District Court Order provides: "Nor does the maxim that cause is determined on a 'case-by-case' basis require the bankruptcy court to enter individualized findings for each case released from the automatic stay. Rather, that maxim directs consideration of lift-stay motions in the factual context from which they arise."[36] That holding turns the case-by-case standard on its head, by holding that the case-by-case analysis can be satisfied by a categorical showing, ignoring the plain meaning of "case-by-case." That reading does not withstand scrutiny.

---

[34] *Mac Donald*, 755 F.2d at 717 (9th Cir. 1985).

[35] *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984); *In re City of San Bernardino*, 558 B.R. 321, 332 (C.D. Cal. 2016).

[36] 1-LMIER-12.

### A. Neither the Bankruptcy Court Nor the District Court Examined Any Fact Relevant to Any One of the Five Released Cases

Neither the Bankruptcy Court Order nor the District Court Order identified any fact relevant to finding cause for stay relief for any of the five Released Cases. The Docket Text Order states only that the Motion "easily satisfies the A & C test by considering and weighing the factors, as the court does independently here," without naming a single factor or any fact about any Released Case.[37] The written order stated only that "the legal and factual bases set forth in the Motion establish just cause for the relief," incorporating the Motion by reference.[38] The Motion discusses the *Curtis* factors, but applies none of them to any individual Released Case.[39] Its showing of cause consists of the general assertion that releasing the five Released Cases "dramatically alleviates the burden of litigation" and lets the Debtor and the Non-Debtor Affiliates "focus their attention on the mediation" toward "a prompt consensual resolution of this Bankruptcy Case," because the Stipulation resolves the Injunction Motion[40] "with little to no additional expense to

---

[37] 1-LMIER-52.

[38] 1-LMIER-16.

[39] 3-LMIER-560.

[40] 8-LMIER-1547–1690 (*Motion for Order Extending Stay to All State Court Cases in Which Debtor and/or Non-Debtor Affiliates Are Named as Defendants Under Bankruptcy Code Sections 105(a) and 362*, Adversary Proceeding No. 25-03019, Dkt. No. 8).

the estate."[41] None of these assertions relates to any fact about any particular Released Case.

The Gaspari and Weinstein Declarations cited by the District Court Order likewise address risk to the Bucket II category[42] and to the bankruptcy case as a whole: discovery burden, indemnity exposure, and insurance-exhaustion risk from the category of litigation generally, but not from any specific Released Case.[43] That is unsurprising because the Debtor filed both Declarations with the Injunction Motion, which sought to extend the stay to all Bucket II actions, months before the Stipulation designated the five Released Cases. Neither Declaration could have addressed facts particular to cases that did not yet exist as a defined set. No part of the record ties any fact to any specific Released Case. Hence, not only did the Bankruptcy Court not examine cause on a case-by-case basis, it was impossible for it to do so, because the record contained no specific facts of any Released Case.

---

[41] 3-LMIER-561.

[42] *See* 8-LMIER-1587 (The Debtor noted that the former JCCP 5108 coordination trial judge, the Hon. Noel Wise, used a "Bucket" designation system to differentiate between cases. "Bucket II cases" describe cases in which at least one defendant was in bankruptcy but a co-defendant was not in bankruptcy.)

[43] *See* 8-LMIER-1591–1592 (*Declaration of Paul E. Gaspari in Support of Motion for Order Extending Stay to All State Court Cases in Which Debtor and/or Non-Debtor Affiliates Are Named as Defendants Under Bankruptcy Code Section 105(a) and 362* ("Gaspari Decl."), Adv. Proc. Dkt. No. 8-3 ¶ ¶ 23-26); *see also* 8-LMIER-1679 (*Declaration of Barron L. Weinstein in Support of Motion for Order Extending Stay to All State Court Cases in Which Debtor and/or Non-Debtor Affiliates Are Named as Defendants Under Bankruptcy Code Section 105(a) and 362* ("Weinstein Decl."), Adv. Proc. Dkt. No. 8-3 ¶ ¶ 9-12).

### B. Other Circuits Confirm That Cause Turns on the Facts of the Specific Matter, Not a Category of Matters

No decision of this Court defines what the case-by-case requirement requires when a single order releases several separate actions. Other circuits, interpreting this requirement, have consistently held that cause must be assessed individually, consistent with the phrase's plain meaning. The Second Circuit has explained that because neither the statute nor its legislative history defines "cause" and the legislative history gives only very general guidance, "the facts of ***each*** request will determine whether relief is appropriate under the circumstances."[44] The Eleventh Circuit has stated that the "courts evaluating whether to grant stay relief have looked to a variety of ***case-specific*** factors."[45] The Third Circuit has held that cause must be assessed based on totality of circumstances in ***each particular case***.[46] A Pennsylvania bankruptcy court likewise held that because cause is "broad and flexible", it requires a "fact intensive analysis" dictated by "the unique facts of a particular case," considering "the interest of the debtor, creditors, and parties in interest as well as the underlying policies of the Bankruptcy Code."[47]

---

[44] *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999) (emphasis added).

[45] *In re Feingold,* 730 F.3d 1268, 1277 (11th Cir. 2013) (emphasis added).

[46] *In re Wilson*, 116 F.3d 87,89 (3d Cir. 1997) (emphasis added).

[47] *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004); *see also In re Gindi,* 642 F.3d 865, 872 (10th Cir. 2011); *In re Busch,* 294 B.R. 137, 141-42 (B.A.P. 10th

This consensus reflects more than a formal preference for individualized findings. A standard that can be used to justify the selection of a number of cases from a larger group without reference to any fact peculiar to each of the selected cases does not permit appellate review. Because there, it fails to explain why some cases were selected, but not others from the same category. Under that reasoning, the Stipulation's parties could choose the five Released Cases on any basis they wished, including the basis most favorable to the claimants, and the record would never need to show why. Requiring the record to show cause for each specific case granted stay relief can be the only check on that kind of selection.

### C. *Tucson Estates* Does Not Support a Categorical Reading of the Case-by-Case Standard

Because "cause" is nowhere defined in the Code, interpreting the case-by-case requirement begins with the ordinary meaning of the words courts use to describe it.[48] "Case-by-case" means a decision "made separately, each according to the facts of the particular situation."[49] *Tucson Estates* states the general rule that

---

Cir. 2003); *Matter of Baptist Medical Center of New York, Inc.,* 52 B.R. 417, 425 (E.D.N.Y. 1985); *In re Neals,* 459 B.R. 612, 619 (Bankr.D.S.C.2011); *In re Caldwell,* 101 B.R. 728, 732 (Bankr.D.Utah 1989).

[48] *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011); *see also Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose" (internal quotation marks omitted)).

[49] "case-by-case," *Cambridge English Dictionary*.

cause is determined on a case-by-case basis,[50] but it addresses only a single lawsuit. The District Court cites *Tucson Estates* for a proposition the opinion never addresses.

Nothing in *Tucson Estates* states that this maxim is satisfied by considering a general factual context rather than the facts of the case for which stay relief is sought. Its facts confirm the opposite. There, the debtor's bankruptcy filing automatically stayed a single state court lawsuit over the reach of a restrictive covenant governing golf course use rights and a related claim for misappropriation damages, and the bankruptcy court reimposed that stay after initially permitting the litigation to proceed.[51] The bankruptcy court's decision to lift the stay rested on "specific factual findings that provide a fully developed record" of the lawsuit, including its six-year history, the debtor's loss of an important summary judgment motion, and a trial already underway.[52] The Ninth Circuit held that these case-specific findings, "supported by the record and not clearly erroneous," required lifting the stay to allow that litigation to proceed to judgment.[53] *Tucson Estates*

---

[50] *Tucson Estates*, 912 F.2d at 1166.

[51] *Id.* at 1164-66.

[52] *Id.* at 1169.

[53] *Id.*

never considered, and says nothing about, whether several separately filed lawsuits may be released together on one undifferentiated record.

If anything, *Tucson Estates* confirms the opposite of what the District Court read it to hold: even deciding a single lawsuit, the Ninth Circuit grounded its ruling in the specific facts of that one case, not in the category of disputes it resembled. It is that case-specific analysis, not the general "factual context" the District Court invoked, that the case-by-case standard requires.

### D. The *Sacramento* Decision Never Required a Case-by-Case Determination of Cause

The District Court found the *Sacramento*[54] and *Oakland*[55] district court decisions "highly persuasive" and relied on them in large part to affirm the Bankruptcy Court Order.[56] Neither is persuasive, because each affirmed stay relief granted without the case-by-case determination of cause that this Court requires.[57]

The *Sacramento* decision affirmed an order lifting the stay as to four state court actions selected by stipulation from more than two hundred.[58] The *Sacramento* bankruptcy court found "just cause" based on the motion and "all the

---

[54] *Bishop of Sacramento*, 2026 WL 508073 (E.D. Cal. Feb. 24, 2026)

[55] *Bishop of Oakland*, 680 B.R. 658 (N.D. Cal. 2026).

[56] 1-LMIER-7.

[57] *Conejo*, 96 F.3d at 352 (9th Cir. 1996); *Mac Donald*, 755 F.2d at 717.

[58] *Bishop of Sacramento*, 2026 WL 508073, at *4.

proceedings had before the Court," without identifying any basis for cause specific to the four actions.[59] The *Sacramento* district court acknowledged that cause is determined on a case-by-case basis.[60] However, it affirmed based on a categorical predicate: "the existence of more than two hundred pending state court actions permeated with state law issues."[61] It neither assessed whether the four cases constituted "representative cases" nor examined whether cause existed to lift the stay as to any of the four actions actually released.[62] By upholding a finding of cause untethered to those cases, the *Sacramento* district court failed to apply controlling Ninth Circuit law and should not have been found persuasive by the District Court.[63]

### E. The *Oakland* Decision Applied the Incorrect Standard of Review and Never Required a Case-by-Case Determination of Cause

A court reviewing a stay relief order must determine *de novo* whether the bankruptcy court identified the correct legal rule.[64] Only then does abuse of

---

[59] *See Id.* at *2.

[60] *Id.*

[61] *Id.* at *4.

[62] *See id.* at *4-5.

[63] *See Conejo*, 96 F.3d at 352; *Mac Donald*, 755 F.2d at 717.

[64] *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009); *Bishop of Oakland*, 680 B.R. 658 at 665-66.

discretion review apply. The *Oakland* district court concluded that "the bankruptcy court applied the correct legal standard" but provided no reason for that finding.[65] It had just described how the bankruptcy court considered the first two *Curtis* factors, in each instance addressing "the state court litigation" as a whole rather than any of the six specific cases released.[66] The court then moved directly from that description to its conclusion that the correct legal standard has been applied, without explaining how considering only categorical factors satisfies the rule that requires case-by-case analysis.

The bankruptcy court left the selection of which cases would receive stay relief to the state court and the stakeholders.[67] By doing so, it made case-by-case review of those cases impossible, as a court cannot assess cause for a specific case it has not yet identified. The *Oakland* district court excused this fundamental mistake by invoking the bankruptcy court's "wide latitude in crafting relief from the automatic stay."[68] However, a bankruptcy court's finding of cause "will be reversed … [if] based on an erroneous conclusion of law," and latitude in shaping

---

[65] *Bishop of Oakland*, at 668.

[66] *Id.* ("the bankruptcy court found advancing the state court litigation would help 'get to a resolution'"; "interference with the bankruptcy case was not 'terribly implicated here.'").

[67] *Id.* at 667; *see id.* at 669.

[68] *Id.* at 667.

the form of relief does not excuse a court from first determining, case-by-case, that cause exists before granting it.[69] A court that hands case selection to another forum has not performed, and cannot perform, the case-by-case determination the Ninth Circuit requires.

Because the bankruptcy court never made a case-by-case determination of cause, the *Oakland* district court's threshold finding that the bankruptcy court applied the correct legal standard does not withstand examination. The opinion's own language confirms as much. Immediately after quoting *Conejo*'s case-by-case rule, the court upheld the finding of cause based on "the status of [the bankruptcy court's] own proceedings."[70] It credited only case-wide rationales—that advancing the litigation would generate information and "create additional pressure" toward a consensual resolution.[71] It held those rationales sufficient "[e]ven if the six selected cases are not representative."[72] A finding indifferent as to which cases were selected is not one made case-by-case. The *Oakland* district court's own description therefore confirms that the bankruptcy court applied the wrong legal standard, which means the District Court's threshold finding to the contrary was

---

[69] *Conejo*, 96 F.3d at 352.

[70] *Bishop of Oakland*, at 668.

[71] *Id.* at 669.

[72] *Id.*

itself an error. Therefore, the District Court should not have given *Oakland* any weight on the question of cause.

## CONCLUSION

For the foregoing reasons, LMI respectfully request that this Court reverse the District Court Order, vacate the Bankruptcy Court's Order, and remand with instruction to deny the Motion.

Date: October 26, 2026

*/s/ Russell W. Roten*

Russell W. Roten
Jeff D. Kahane
Timothy W. Evanston
Isabelle Cho
Skarzynski Marick & Black LLP
333 South Grand Avenue, Suite 3550
Los Angeles, CA 90071
Telephone: (213) 721-0650
Email: rroten@skarzynski.com
jkahane@skarzynski.com
tevanston@skarzynski.com
icho@skarzynski.com
-and-

Catalina J. Sugayan
Michael Norton (*pro hac vice*)
Yongli Yang (*pro hac vice*)
Clyde & Co US LLP
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 635-7000

Email: catalina.sugayan@clydeco.us
michael.norton@clydeco.us
yongli.yang@clydeco.us

*Attorneys for Appellant London Market Insurers*

**No. 26-04721**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

CERTAIN UNDERWRITERS AT LLOYD'S LONDON, et al.,

*Appellants*,

v.

Roman Catholic Archbishop of San Francisco

*Appellees.*

On Appeal from the United States District Court
for the Northern District of California
No. 3:25-cv-08563

---

# ADDENDUM TO APPELLANT LONDON MARKET INSURERS' OPENING BRIEF

---


Russell W. Roten (SBN 170571)
Jeff D. Kahane (SBN 223329)
Timothy W. Evanston (SBN 319342)
Isabelle Cho (SBN 360275)
**Skarzynski Marick & Black LLP**
333 South Grand Avenue, Suite 3550
Los Angeles, CA 90071
Telephone: (213) 721-0650
rroten@skarzysnki.com
jkahane@skarzynski.com
tevanston@skarzynski.com
icho@skarzynski.com

Catalina J. Sugayan
Michael Norton (*pro hac vice*)
Yongli Yang (*pro hac vice*)
**Clyde & Co US LLP**
30 S. Wacker Drive, Suite 2600
Chicago, IL 60606
Telephone: (312) 635-7000
catalina.sugayan@clydeco.us
michael.norton@clydeco.us
yongli.yang@clydeco.us

# ADDENDUM TABLE OF CONTENTS

Page

11 U.S.C. § 362 .......... 1

28 U.S.C. § 158 .......... 17

KeyCite Yellow Flag
Unconstitutional or Preempted Prior Version's Limitation Recognized by In re Medical Care Management Co., Bkrtcy.M.D.Tenn., Jan. 02, 2003
KeyCite Yellow Flag
Proposed Legislation

United States Code Annotated
Title 11. Bankruptcy (Refs & Annos)
Chapter 3. Case Administration (Refs & Annos)
Subchapter IV. Administrative Powers

11 U.S.C.A. § 362

§ 362. Automatic stay

Effective: October 30, 2020
Currentness

**(a)** Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--

**(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

**(2)** the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

**(3)** any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

**(4)** any act to create, perfect, or enforce any lien against property of the estate;

**(5)** any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

**(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

**(7)** the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(8)** the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

**(b)** The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay--

**(1)** under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor;

**(2)** under subsection (a)--

**(A)** of the commencement or continuation of a civil action or proceeding--

**(i)** for the establishment of paternity;

**(ii)** for the establishment or modification of an order for domestic support obligations;

**(iii)** concerning child custody or visitation;

**(iv)** for the dissolution of a marriage, except to the extent that such proceeding seeks to determine the division of property that is property of the estate; or

**(v)** regarding domestic violence;

**(B)** of the collection of a domestic support obligation from property that is not property of the estate;

**(C)** with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute;

**(D)** of the withholding, suspension, or restriction of a driver's license, a professional or occupational license, or a recreational license, under State law, as specified in section 466(a)(16) of the Social Security Act;

**(E)** of the reporting of overdue support owed by a parent to any consumer reporting agency as specified in section 466(a)(7) of the Social Security Act;

**(F)** of the interception of a tax refund, as specified in sections 464 and 466(a)(3) of the Social Security Act or under an analogous State law; or

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(G)** of the enforcement of a medical obligation, as specified under title IV of the Social Security Act;

**(3)** under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title;

**(4)** under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and on Their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

**[(5) Repealed.** Pub.L. 105-277, Div. I, Title VI, § 603(1), Oct. 21, 1998, 112 Stat. 2681-886]

**(6)** under subsection (a) of this section, of the exercise by a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency of any contractual right (as defined in section 555 or 556) under any security agreement or arrangement or other credit enhancement forming a part of or related to any commodity contract, forward contract or securities contract, or of any contractual right (as defined in section 555 or 556) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such contracts, including any master agreement for such contracts;

**(7)** under subsection (a) of this section, of the exercise by a repo participant or financial participant of any contractual right (as defined in section 559) under any security agreement or arrangement or other credit enhancement forming a part of or related to any repurchase agreement, or of any contractual right (as defined in section 559) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements;

**(8)** under subsection (a) of this section, of the commencement of any action by the Secretary of Housing and Urban Development to foreclose a mortgage or deed of trust in any case in which the mortgage or deed of trust held by the Secretary is insured or was formerly insured under the National Housing Act and covers property, or combinations of property, consisting of five or more living units;

**(9)** under subsection (a), of--

**(A)** an audit by a governmental unit to determine tax liability;

**(B)** the issuance to the debtor by a governmental unit of a notice of tax deficiency;

**(C)** a demand for tax returns; or

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(D)** the making of an assessment for any tax and issuance of a notice and demand for payment of such an assessment (but any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor).

**(10)** under subsection (a) of this section, of any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property;

**(11)** under subsection (a) of this section, of the presentment of a negotiable instrument and the giving of notice of and protesting dishonor of such an instrument;

**(12)** under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Transportation under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage, or a security interest in or relating to a vessel or vessel under construction, held by the Secretary of Transportation under chapter 537 of title 46 or section 109(h) of title 49, or under applicable State law;

**(13)** under subsection (a) of this section, after the date which is 90 days after the filing of such petition, of the commencement or continuation, and conclusion to the entry of final judgment, of an action which involves a debtor subject to reorganization pursuant to chapter 11 of this title and which was brought by the Secretary of Commerce under section 31325 of title 46 (including distribution of any proceeds of sale) to foreclose a preferred ship or fleet mortgage in a vessel or a mortgage, deed of trust, or other security interest in a fishing facility held by the Secretary of Commerce under chapter 537 of title 46;

**(14)** under subsection (a) of this section, of any action by an accrediting agency regarding the accreditation status of the debtor as an educational institution;

**(15)** under subsection (a) of this section, of any action by a State licensing body regarding the licensure of the debtor as an educational institution;

**(16)** under subsection (a) of this section, of any action by a guaranty agency, as defined in section 435(j) of the Higher Education Act of 1965 or the Secretary of Education regarding the eligibility of the debtor to participate in programs authorized under such Act;

**(17)** under subsection (a) of this section, of the exercise by a swap participant or financial participant of any contractual right (as defined in section 560) under any security agreement or arrangement or other credit enhancement forming a part of or related to any swap agreement, or of any contractual right (as defined in section 560) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such agreements, including any master agreement for such agreements;

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(18)** under subsection (a) of the creation or perfection of a statutory lien for an ad valorem property tax, or a special tax or special assessment on real property whether or not ad valorem, imposed by a governmental unit, if such tax or assessment comes due after the date of the filing of the petition;

**(19)** under subsection (a), of withholding of income from a debtor's wages and collection of amounts withheld, under the debtor's agreement authorizing that withholding and collection for the benefit of a pension, profit-sharing, stock bonus, or other plan established under section 401, 403, 408, 408A, 414, 457, or 501(c) of the Internal Revenue Code of 1986, that is sponsored by the employer of the debtor, or an affiliate, successor, or predecessor of such employer--

**(A)** to the extent that the amounts withheld and collected are used solely for payments relating to a loan from a plan under section 408(b)(1) of the Employee Retirement Income Security Act of 1974 or is subject to section 72(p) of the Internal Revenue Code of 1986; or

**(B)** a loan from a thrift savings plan permitted under subchapter III of chapter 84 of title 5, that satisfies the requirements of section 8433(g) of such title;

but nothing in this paragraph may be construed to provide that any loan made under a governmental plan under section 414(d), or a contract or account under section 403(b), of the Internal Revenue Code of 1986 constitutes a claim or a debt under this title;

**(20)** under subsection (a), of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing;

**(21)** under subsection (a), of any act to enforce any lien against or security interest in real property--

**(A)** if the debtor is ineligible under section 109(g) to be a debtor in a case under this title; or

**(B)** if the case under this title was filed in violation of a bankruptcy court order in a prior case under this title prohibiting the debtor from being a debtor in another case under this title;

**(22)** subject to subsection (l), under subsection (a)(3), of the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor;

**(23)** subject to subsection (m), under subsection (a)(3), of an eviction action that seeks possession of the residential property in which the debtor resides as a tenant under a lease or rental agreement based on endangerment of such property or the illegal use of controlled substances on such property, but only if the lessor files with the court, and serves upon the debtor, a certification under penalty of perjury that such an eviction action has been filed, or that the debtor, during the 30-day

period preceding the date of the filing of the certification, has endangered property or illegally used or allowed to be used a controlled substance on the property;

**(24)** under subsection (a), of any transfer that is not avoidable under section 544 and that is not avoidable under section 549;

**(25)** under subsection (a), of--

**(A)** the commencement or continuation of an investigation or action by a securities self regulatory organization to enforce such organization's regulatory power;

**(B)** the enforcement of an order or decision, other than for monetary sanctions, obtained in an action by such securities self regulatory organization to enforce such organization's regulatory power; or

**(C)** any act taken by such securities self regulatory organization to delist, delete, or refuse to permit quotation of any stock that does not meet applicable regulatory requirements;

**(26)** under subsection (a), of the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief, except that in any case in which the setoff of an income tax refund is not permitted under applicable nonbankruptcy law because of a pending action to determine the amount or legality of a tax liability, the governmental unit may hold the refund pending the resolution of the action, unless the court, on the motion of the trustee and after notice and a hearing, grants the taxing authority adequate protection (within the meaning of section 361) for the secured claim of such authority in the setoff under section 506(a);

**(27)** under subsection (a) of this section, of the exercise by a master netting agreement participant of any contractual right (as defined in section 555, 556, 559, or 560) under any security agreement or arrangement or other credit enhancement forming a part of or related to any master netting agreement, or of any contractual right (as defined in section 555, 556, 559, or 560) to offset or net out any termination value, payment amount, or other transfer obligation arising under or in connection with 1 or more such master netting agreements to the extent that such participant is eligible to exercise such rights under paragraph (6), (7), or (17) for each individual contract covered by the master netting agreement in issue;

**(28)** under subsection (a), of the exclusion by the Secretary of Health and Human Services of the debtor from participation in the medicare program or any other Federal health care program (as defined in section 1128B(f) of the Social Security Act pursuant to title XI or XVIII of such Act); and

**(29)** under subsection (a)(1) of this section, of any action by--

**(A)** an amateur sports organization, as defined in section 220501(b) of title 36, to replace a national governing body, as defined in that section, under section 220528 of that title; or

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(B)** the corporation, as defined in section 220501(b) of title 36, to revoke the certification of a national governing body, as defined in that section, under section 220521 of that title.

The provisions of paragraphs (12) and (13) of this subsection shall apply with respect to any such petition filed on or before December 31, 1989.

**(c)** Except as provided in subsections (d), (e), (f), and (h) of this section--

**(1)** the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;

**(2)** the stay of any other act under subsection (a) of this section continues until the earliest of--

**(A)** the time the case is closed;

**(B)** the time the case is dismissed; or

**(C)** if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied;

**(3)** if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)--

**(A)** the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

**(B)** on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed; and

**(C)** for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)--

**(i)** as to all creditors, if--

**(I)** more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

**(II)** a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to--

**(aa)** file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

**(bb)** provide adequate protection as ordered by the court; or

**(cc)** perform the terms of a plan confirmed by the court; or

**(III)** there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded--

**(aa)** if a case under chapter 7, with a discharge; or

**(bb)** if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

**(ii)** as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor; and

**(4)(A)(i)** if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b), the stay under subsection (a) shall not go into effect upon the filing of the later case; and

**(ii)** on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect;

**(B)** if, within 30 days after the filing of the later case, a party in interest requests the court may order the stay to take effect in the case as to any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing, only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed;

**(C)** a stay imposed under subparagraph (B) shall be effective on the date of the entry of the order allowing the stay to go into effect; and

**(D)** for purposes of subparagraph (B), a case is presumptively filed not in good faith (but such presumption may be rebutted by clear and convincing evidence to the contrary)--

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(i)** as to all creditors if--

**(I)** 2 or more previous cases under this title in which the individual was a debtor were pending within the 1-year period;

**(II)** a previous case under this title in which the individual was a debtor was dismissed within the time period stated in this paragraph after the debtor failed to file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney), failed to provide adequate protection as ordered by the court, or failed to perform the terms of a plan confirmed by the court; or

**(III)** there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under this title, or any other reason to conclude that the later case will not be concluded, if a case under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; or

**(ii)** as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, such action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor.

**(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--

**(1)** for cause, including the lack of adequate protection of an interest in property of such party in interest;

**(2)** with respect to a stay of an act against property under subsection (a) of this section, if--

**(A)** the debtor does not have an equity in such property; and

**(B)** such property is not necessary to an effective reorganization;

**(3)** with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later--

**(A)** the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

**(B)** the debtor has commenced monthly payments that--

**(i)** may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

**(ii)** are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate; or

**(4)** with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either--

**(A)** transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

**(B)** multiple bankruptcy filings affecting such real property.

If recorded in compliance with applicable State laws governing notices of interests or liens in real property, an order entered under paragraph (4) shall be binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of the entry of such order by the court, except that a debtor in a subsequent case under this title may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing. Any Federal, State, or local governmental unit that accepts notices of interests or liens in real property shall accept any certified copy of an order described in this subsection for indexing and recording.

**(e)(1)** Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

**(2)** Notwithstanding paragraph (1), in a case under chapter 7, 11, or 13 in which the debtor is an individual, the stay under subsection (a) shall terminate on the date that is 60 days after a request is made by a party in interest under subsection (d), unless--

**(A)** a final decision is rendered by the court during the 60-day period beginning on the date of the request; or

**(B)** such 60-day period is extended--

**(i)** by agreement of all parties in interest; or

**(ii)** by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court.

**(f)** Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

**(g)** In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--

**(1)** the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

**(2)** the party opposing such relief has the burden of proof on all other issues.

**(h)(1)** In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)--

**(A)** to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and

**(B)** to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms.

**(2)** Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by section 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, and orders appropriate adequate protection of the creditor's interest, and orders the debtor to deliver any collateral in the debtor's possession to the trustee. If the court does not so determine, the stay provided by subsection (a) shall terminate upon the conclusion of the hearing on the motion.

**(i)** If a case commenced under chapter 7, 11, or 13 is dismissed due to the creation of a debt repayment plan, for purposes of subsection (c)(3), any subsequent case commenced by the debtor under any such chapter shall not be presumed to be filed not in good faith.

**(j)** On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated.


© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**(k)(1)** Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

**(2)** If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

**(l)(1)** Except as otherwise provided in this subsection, subsection (b)(22) shall apply on the date that is 30 days after the date on which the bankruptcy petition is filed, if the debtor files with the petition and serves upon the lessor a certification under penalty of perjury that--

**(A)** under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment for possession was entered; and

**(B)** the debtor (or an adult dependent of the debtor) has deposited with the clerk of the court, any rent that would become due during the 30-day period after the filing of the bankruptcy petition.

**(2)** If, within the 30-day period after the filing of the bankruptcy petition, the debtor (or an adult dependent of the debtor) complies with paragraph (1) and files with the court and serves upon the lessor a further certification under penalty of perjury that the debtor (or an adult dependent of the debtor) has cured, under nonbankruptcy law applicable in the jurisdiction, the entire monetary default that gave rise to the judgment under which possession is sought by the lessor, subsection (b)(22) shall not apply, unless ordered to apply by the court under paragraph (3).

**(3)(A)** If the lessor files an objection to any certification filed by the debtor under paragraph (1) or (2), and serves such objection upon the debtor, the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the certification filed by the debtor under paragraph (1) or (2) is true.

**(B)** If the court upholds the objection of the lessor filed under subparagraph (A)--

**(i)** subsection (b)(22) shall apply immediately and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

**(ii)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the court's order upholding the lessor's objection.

**(4)** If a debtor, in accordance with paragraph (5), indicates on the petition that there was a judgment for possession of the residential rental property in which the debtor resides and does not file a certification under paragraph (1) or (2)--

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Case: 26-5049, 10/26/2026, DktEntry: 18.1, (43 of 53)

**(A)** subsection (b)(22) shall apply immediately upon failure to file such certification, and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

**(B)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the docket indicating the absence of a filed certification and the applicability of the exception to the stay under subsection (b)(22).

**(5)(A)** Where a judgment for possession of residential property in which the debtor resides as a tenant under a lease or rental agreement has been obtained by the lessor, the debtor shall so indicate on the bankruptcy petition and shall provide the name and address of the lessor that obtained that pre-petition judgment on the petition and on any certification filed under this subsection.

**(B)** The form of certification filed with the petition, as specified in this subsection, shall provide for the debtor to certify, and the debtor shall certify--

**(i)** whether a judgment for possession of residential rental housing in which the debtor resides has been obtained against the debtor before the date of the filing of the petition; and

**(ii)** whether the debtor is claiming under paragraph (1) that under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment of possession was entered, and has made the appropriate deposit with the court.

**(C)** The standard forms (electronic and otherwise) used in a bankruptcy proceeding shall be amended to reflect the requirements of this subsection.

**(D)** The clerk of the court shall arrange for the prompt transmittal of the rent deposited in accordance with paragraph (1)(B) to the lessor.

**(m)(1)** Except as otherwise provided in this subsection, subsection (b)(23) shall apply on the date that is 15 days after the date on which the lessor files and serves a certification described in subsection (b)(23).

**(2)(A)** If the debtor files with the court an objection to the truth or legal sufficiency of the certification described in subsection (b)(23) and serves such objection upon the lessor, subsection (b)(23) shall not apply, unless ordered to apply by the court under this subsection.

**(B)** If the debtor files and serves the objection under subparagraph (A), the court shall hold a hearing within 10 days after the filing and service of such objection to determine if the situation giving rise to the lessor's certification under paragraph (1) existed or has been remedied.

**(C)** If the debtor can demonstrate to the satisfaction of the court that the situation giving rise to the lessor's certification under paragraph (1) did not exist or has been remedied, the stay provided under subsection (a)(3) shall remain in effect until the termination of the stay under this section.

**(D)** If the debtor cannot demonstrate to the satisfaction of the court that the situation giving rise to the lessor's certification under paragraph (1) did not exist or has been remedied--

**(i)** relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to proceed with the eviction; and

**(ii)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the court's order upholding the lessor's certification.

**(3)** If the debtor fails to file, within 15 days, an objection under paragraph (2)(A)--

**(A)** subsection (b)(23) shall apply immediately upon such failure and relief from the stay provided under subsection (a)(3) shall not be required to enable the lessor to complete the process to recover full possession of the property; and

**(B)** the clerk of the court shall immediately serve upon the lessor and the debtor a certified copy of the docket indicating such failure.

**(n)(1)** Except as provided in paragraph (2), subsection (a) does not apply in a case in which the debtor--

**(A)** is a debtor in a small business case pending at the time the petition is filed;

**(B)** was a debtor in a small business case that was dismissed for any reason by an order that became final in the 2-year period ending on the date of the order for relief entered with respect to the petition;

**(C)** was a debtor in a small business case in which a plan was confirmed in the 2-year period ending on the date of the order for relief entered with respect to the petition; or

**(D)** is an entity that has acquired substantially all of the assets or business of a small business debtor described in subparagraph (A), (B), or (C), unless such entity establishes by a preponderance of the evidence that such entity acquired substantially all of the assets or business of such small business debtor in good faith and not for the purpose of evading this paragraph.

**(2)** Paragraph (1) does not apply--

**(A)** to an involuntary case involving no collusion by the debtor with creditors; or

**(B)** to the filing of a petition if--

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(i)** the debtor proves by a preponderance of the evidence that the filing of the petition resulted from circumstances beyond the control of the debtor not foreseeable at the time the case then pending was filed; and

**(ii)** it is more likely than not that the court will confirm a feasible plan, but not a liquidating plan, within a reasonable period of time.

**(o)** The exercise of rights not subject to the stay arising under subsection (a) pursuant to paragraph (6), (7), (17), or (27) of subsection (b) shall not be stayed by any order of a court or administrative agency in any proceeding under this title.

CREDIT(S)

(Pub.L. 95-598, Nov. 6, 1978, 92 Stat. 2570; Pub.L. 97-222, § 3, July 27, 1982, 96 Stat. 235; Pub.L. 98-353, Title III, §§ 304, 363(b), 392, 441, July 10, 1984, 98 Stat. 352, 363, 365, 371; Pub.L. 99-509, Title V, § 5001(a), Oct. 21, 1986, 100 Stat. 1911; Pub.L. 99-554, Title II, §§ 257(j), 283(d), Oct. 27, 1986, 100 Stat. 3115, 3116; Pub.L. 101-311, Title I, § 102, Title II, § 202, June 25, 1990, 104 Stat. 267, 269; Pub.L. 101-508, Title III, § 3007(a)(1), Nov. 5, 1990, 104 Stat. 1388-28; Pub.L. 103-394, Title I, §§ 101, 116, Title II, §§ 204(a), 218(b), Title III, § 304(b), Title IV, § 401, Title V, § 501(b)(2), (d)(7), Oct. 22, 1994, 108 Stat. 4107, 4119, 4122, 4128, 4132, 4141, 4142, 4144; Pub.L. 105-277, Div. I, Title VI, § 603, Oct. 21, 1998, 112 Stat. 2681-886; Pub.L. 109-8, Title I, § 106(f), Title II, §§ 214, 224(b), Title III, §§ 302, 303, 305(1), 311, 320, Title IV, §§ 401(b), 441, 444, Title VII, §§ 709, 718, Title IX, § 907(d), (o)(1), (2), Title XI, § 1106, Title XII, § 1225, Apr. 20, 2005, 119 Stat. 41, 54, 64, 75, 77, 79, 84, 94, 104, 114, 117, 127, 131, 176, 181, 182, 192, 199; Pub.L. 109-304, § 17(b)(1), Oct. 6, 2006, 120 Stat. 1706; Pub.L. 109-390, § 5(a)(2), Dec. 12, 2006, 120 Stat. 2696; Pub.L. 111-327, § 2(a)(12), Dec. 22, 2010, 124 Stat. 3558; Pub.L. 116-189, § 9, Oct. 30, 2020, 134 Stat. 970.)

**AMENDMENT OF SUBSEC. (A)**

<Pub.L. 119-27, §§ 11(c), 20, July 18, 2025, 139 Stat. 457, 466, provided that effective on the earlier of (1) the date that is 18 months after July 18, 2025; or (2) the date that is 120 days after the date on which the primary Federal payment stablecoin regulators issue any final regulations implementing Pub.L. 119-27, subsec. (a) is amended-->

<**(A)** in paragraph (7), by striking “and”;>

<**(B)** in paragraph (8), by striking the period and inserting “; and”; and>

<**(C)** by adding at the end the following:>

<**(9)** the redemption of payment stablecoins issued by the permitted payment stablecoin issuer, from payment stablecoin reserves required to be maintained under section 4 of the GENIUS Act.>

**AMENDMENT OF SUBSEC. (D)**

<Pub.L. 119-27, §§ 11(c), 20, July 18, 2025, 139 Stat. 457, 466, provided that effective on the earlier of (1) the date that is 18 months after July 18, 2025; or (2) the date that is 120 days after the date on which the primary Federal payment stablecoin regulators issue any final regulations implementing Pub.L. 119-27, subsec. (d) is amended-->

<**(A)** in paragraph (3)(B)(ii), by striking “or” at the end;>

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

<**(B)** in paragraph (4)(B), by striking the period at the end and inserting "; or"; and>

<**(C)** by inserting after paragraph (4) the following:>

<**(5)** with respect to the redemption of payment stablecoins held by a person, if the court finds, subject to the motion and attestation of the permitted payment stablecoin issuer, which shall be filed on the petition date or as soon as practicable thereafter, there are payment stablecoin reserves available for distribution on a ratable basis to similarly situated payment stablecoin holders, provided that the court shall use best efforts to enter a final order to begin distributions under this paragraph not later than 14 days after the date of the required hearing.>

Notes of Decisions (6652)

11 U.S.C.A. § 362, 11 USCA § 362
Current through P.L. 119-127. Some statute sections may be more current, see credits for details.

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case: 26-5049, 10/26/2026, DktEntry: 18.1, (47 of 53)

KeyCite Yellow Flag
Unconstitutional or Preempted Limited on Constitutional Grounds by In re Ortiz, 7th Cir.(Wis.), Dec. 30, 2011

United States Code Annotated
Title 28. Judiciary and Judicial Procedure (Refs & Annos)
Part I. Organization of Courts (Refs & Annos)
Chapter 6. Bankruptcy Judges (Refs & Annos)

28 U.S.C.A. § 158

§ 158. Appeals

Effective: December 22, 2010
Currentness

**(a)** The district courts of the United States shall have jurisdiction to hear appeals [1]

**(1)** from final judgments, orders, and decrees;

**(2)** from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and

**(3)** with leave of the court, from other interlocutory orders and decrees;

of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

**(b)(1)** The judicial council of a circuit shall establish a bankruptcy appellate panel service composed of bankruptcy judges of the districts in the circuit who are appointed by the judicial council in accordance with paragraph (3), to hear and determine, with the consent of all the parties, appeals under subsection (a) unless the judicial council finds that--

**(A)** there are insufficient judicial resources available in the circuit; or

**(B)** establishment of such service would result in undue delay or increased cost to parties in cases under title 11.

Not later than 90 days after making the finding, the judicial council shall submit to the Judicial Conference of the United States a report containing the factual basis of such finding.

**(2)(A)** A judicial council may reconsider, at any time, the finding described in paragraph (1).

**(B)** On the request of a majority of the district judges in a circuit for which a bankruptcy appellate panel service is established under paragraph (1), made after the expiration of the 1-year period beginning on the date such service is established, the judicial council of the circuit shall determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

**(C)** On its own motion, after the expiration of the 3-year period beginning on the date a bankruptcy appellate panel service is established under paragraph (1), the judicial council of the circuit may determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

**(D)** If the judicial council finds that either of such circumstances exists, the judicial council may provide for the completion of the appeals then pending before such service and the orderly termination of such service.

**(3)** Bankruptcy judges appointed under paragraph (1) shall be appointed and may be reappointed under such paragraph.

**(4)** If authorized by the Judicial Conference of the United States, the judicial councils of 2 or more circuits may establish a joint bankruptcy appellate panel comprised of bankruptcy judges from the districts within the circuits for which such panel is established, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.

**(5)** An appeal to be heard under this subsection shall be heard by a panel of 3 members of the bankruptcy appellate panel service, except that a member of such service may not hear an appeal originating in the district for which such member is appointed or designated under section 152 of this title.

**(6)** Appeals may not be heard under this subsection by a panel of the bankruptcy appellate panel service unless the district judges for the district in which the appeals occur, by majority vote, have authorized such service to hear and determine appeals originating in such district.

**(c)(1)** Subject to subsections (b) and (d)(2), each appeal under subsection (a) shall be heard by a 3-judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless--

**(A)** the appellant elects at the time of filing the appeal; or

**(B)** any other party elects, not later than 30 days after service of notice of the appeal;

to have such appeal heard by the district court.

**(2)** An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

**(d)(1)** The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

**(2)(A)** The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that--

**(i)** the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

**(ii)** the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

**(iii)** an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

**(B)** If the bankruptcy court, the district court, or the bankruptcy appellate panel--

**(i)** on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists; or

**(ii)** receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification described in subparagraph (A);

then the bankruptcy court, the district court, or the bankruptcy appellate panel shall make the certification described in subparagraph (A).

**(C)** The parties may supplement the certification with a short statement of the basis for the certification.

**(D)** An appeal under this paragraph does not stay any proceeding of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken, unless the respective bankruptcy court, district court, or bankruptcy appellate panel, or the court of appeals in which the appeal is pending, issues a stay of such proceeding pending the appeal.

**(E)** Any request under subparagraph (B) for certification shall be made not later than 60 days after the entry of the judgment, order, or decree.

CREDIT(S)

(Added Pub.L. 98-353, Title I, § 104(a), July 10, 1984, 98 Stat. 341; amended Pub.L. 101-650, Title III, § 305, Dec. 1, 1990, 104 Stat. 5105; Pub.L. 103-394, Title I, §§ 102, 104(c), (d), Oct. 22, 1994, 108 Stat. 4108-4110; Pub.L. 109-8, Title XII, § 1233(a), Apr. 20, 2005, 119 Stat. 202; Pub.L. 111-327, § 2(c)(1), Dec. 22, 2010, 124 Stat. 3563.)

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

Case: 26-5049, 10/26/2026, DktEntry: 18.1, (50 of 53)

Notes of Decisions (1020)

## Footnotes

1 So in original. Probably should be followed by a dash.

28 U.S.C.A. § 158, 28 USCA § 158
Current through P.L. 119-127. Some statute sections may be more current, see credits for details.

End of Document © 2026 Thomson Reuters. No claim to original U.S. Government Works.

 © 2026 Thomson Reuters. No claim to original U.S. Government Works. 

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s):** No. 26-04721

The undersigned attorney or self-represented party states the following:

[x] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

*Interstate Fire & Cas. Co. v. The Roman Catholic Bishop of Sacramento* (In re The Roman Catholic Bishop of Sacramento), No. 26-2812, and *Certain Underwriters at Lloyd's v. The Roman Catholic Bishop of Sacramento* (In re The Roman Catholic Bishop of Sacramento), No. 26-2815 (9th Cir. docketed May 4, 2026). In these bankruptcy-related appeals, the Bankruptcy Court approved a stipulation similar to the one at issue here over insurers' objections, and the District Court affirmed. Although certain parties later reached settlements in principle and the appeals are administratively closed, they raise closely related issues to this case.

*Pacific Indem. Co. v. Roman Catholic Bishop of Oakland* (In re Roman Catholic Bishop of Oakland Bankr. Automatic Stay Appeal), Nos. 26-3082 & 26-3221 (9th Cir. lead case docketed May 14, 2026). In this bankruptcy appeal, the Bankruptcy Court granted the Creditors Committee's motion to permit six abuse claimants to pursue state-court bellwether claims, allowing the State Court to select the claimants, and the District Court affirmed over objections from insurers and the Roman Catholic Bishop of Oakland. Although the relief did not involve a stipulation, the appeal raises closely related issues concerning the showing of "cause" required under 11 U.S.C. § 362(d)(1). Opening briefs have been filed, and answering briefs are due on October 28, 2026. *See* No. 26-3082, Dkt. No. 45.

**Signature:** /s/ Russell W. Roten

**Date:** October 26, 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-04721

I am the attorney or self-represented party.

**This brief contains** 5,322 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ______.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Isabelle Cho **Date** 10/26/2026
*(use "s/[typed name]" to sign electronically-filed documents)*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** 26-04721

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellant London Market Insurers' Opening Brief

**Signature** s/ Russell W. Roten **Date** October 26, 2026

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*